**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JAMES A. BOYKINS, | : | |
| | : | Civil Action No. 15-7769 (PGS) |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| GARY M. LANIGAN, | : | |
| | : | |
| Defendant. | : | |

SHERIDAN, DISTRICT JUDGE

Plaintiff James A. Boykins ("Plaintiff"), a convicted and sentenced state prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, seeks to bring this action *in forma pauperis*. Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint must be dismissed without prejudice.

## I. BACKGROUND

The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

On June 24, 2015, Plaintiff's mother purchased six two-ounce plastic bottles of Muslim religious prayer oil from third party vendor. (Compl. ¶ 12.) On June 28, 2015, the prayer oil arrived at the prison mailroom, where it was confiscated as contraband by Defendant G. Kelly. (*Id.* ¶ 13.) On July 9, 2015, Defendant Officer McFady informed Plaintiff that said oils are considered contraband and Plaintiff would have to make arrangements to mail the oils to someone, have someone pick them up, donated to charity or destroyed. (*Id.* ¶ 14.) Plaintiff informed the officer that he would have the oil picked up by a visitor. (*Id.*)

Plaintiff alleges that the confiscation of the oil violates his rights under the Free Exercise clause of the First Amendment and his rights under N.J.A.C. 10A:17-5.8. (*Id.* ¶¶ 24-26.) He is seeking injunctive, declaratory and monetary relief. (*Id.* at 16.)

## II. DISCUSSION

### A. Legal Standard

**1. Standards for a *Sua Sponte* Dismissal**

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may

be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B), 1915A because Plaintiff is a prisoner proceeding *in forma pauperis*.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim[1], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

2. **Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

3

>be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

**B. Analysis**

The law applicable to prisoners' Free Exercise claims is well-settled. Although prisoners "clearly retain protections afforded by the First Amendment, ... including its directive that no law shall prohibit the free exercise of religion," *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted), at the same time, "the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates." *DeHart v. Horn*, 227 F.3d 47, 50-51 (3d Cir. 2000) (citing *Pell v. Procunier*, 417 U.S. 817, 822-23 (1974)). Thus, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *See Pell*, 417 U.S. at 822.

Two threshold requirements must be met before particular beliefs, alleged to be religious in nature, are accorded First Amendment protection. *Africa v. Pennsylvania*, 662 F.2d 1025, 1029-30 (3d Cir. 1981). The beliefs avowed must be (1) sincerely held, and (2) religious in nature. *Id.* If both of these requirements are met, the Court must then apply the standard set out by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987), for assessing prison regulations that restrict inmates' constitutional rights. *Fraise v. Terhune*, 283 F.3d 506, 513 (3d Cir. 2002). Under

4

*Turner*, a regulation passes muster if it is reasonably related to legitimate penological interests. 482 U.S. at 89. *Turner* instructs courts to weigh four factors when applying this standard: first, whether the regulation bears a "valid, rational connection" to a legitimate and neutral governmental objective; second, whether prisoners have alternative ways of exercising the circumscribed right; third, whether accommodating the right would have a deleterious impact on other inmates, guards, and the allocation of prison resources generally; and fourth, whether alternatives exist that "fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests." *Fraise*, 283 F.3d at 513 (citing *Turner*, 482 U.S. at 91).

Under the first step of the free exercise inquiry, the Court must determine whether Plaintiff's need to obtain his prayer oils from a third party vendor is sincerely held and religious in nature. *Africa*, 662 F.2d at 1029-30. While the Court has no reason to doubt the sincerity of Plaintiff's religious beliefs and his need for prayer oil, Plaintiff has not alleged, and the Court cannot conceive of, any sincerely held religious belief which would require that his prayer oils be mailed to him directly rather than obtaining said oil from the prison chaplain, as required by the Department of Corrections's regulation. *DeHart*, 227 F.3d at 51-52; *see also* N.J.A.C. § 10A:17-5.8 ("fragrance oil in approved containers, which are necessary as part of the religious service, may be brought into the correctional facility only by the chaplain or a volunteer religious group leader from the community"). Notably, Plaintiff has not alleged that he cannot obtain the requisite oils from a prison chaplain or other religious official, but only that his attempt to order said oils from a third party vendor was denied. There are no allegations contained in the Complaint to indicate that Plaintiff's desire to receive his religious oils directly from a third party vendor, rather than through the chaplain's office, is due to a sincerely held religious belief; rather, it appears to

be a personal preference. *Id.* Therefore, Plaintiff has failed to meet the threshold requirement to state a free exercise claim and it will be dismissed without prejudice.[2]

### III. CONCLUSION

For the reasons stated above, the Complaint will be dismissed in its entirety for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[3] However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to move to re-open this case and to file an amended complaint.[4] An appropriate

---

[2] Even if the Court were to conclude that Plaintiff's preference for directly ordering the prayer oils is the result of a sincerely held religious belief, the prison policy of outlawing such a practice appears to pass the *Turner* test. First, the requirement manifestly "bears a valid, rational connection to a legitimate and neutral governmental objective." *Fraise*, 283 F.3d at 513-14 (citation omitted). Creating a rule that "fragrance oil in approved containers, which are necessary as part of the religious service, may be brought into the correctional facility only by the chaplain or a volunteer religious group leader from the community," N.J.A.C. § 10A:17-5.8, clearly bears a "valid and rational" connection to the Department of Correction's interest in regulating and controlling the items sent to inmates in its custody. Second, Plaintiff has a viable alternative to exercising the circumscribed right; as stated above, Plaintiff has not alleged that he is being denied prayer oil from the prison chaplain but only that he is not permitted to directly order his own. He can exercise the "circumscribed right" by simply obtaining the oil from the appropriate prison official. Third, permitting Plaintiff to receive prayer oil through the mail directly "would have a deleterious impact on other inmates, guards, and the allocation of prison resources generally." *Fraise*, 283 F.3d at 520. If Plaintiff were permitted to receive such items in the mail directly, the previously discussed security interest would be compromised. Moreover it is clearly most efficient for prison resources to have all religious items regulated and brought into the prison by a limited number of individuals. Finally, there are no "alternatives ... that fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests," *id.* (internal quotations and citations omitted), because the existing policy does fully accommodate Plaintiff's rights; Plaintiff is permitted to obtain religious oils from the chaplain and there are no allegations in the Complaint indicating that he has been prevented from doing so.

[3] Since Plaintiff's claim over which this Court has original jurisdiction has been dismissed, to the extent that Plaintiff sought to bring state law claims, this Court declines to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3).

[4] Plaintiff should note that when an amended complaint is filed, the original complaint no longer

order follows.

Dated: 12/16/15

/s/ Peter Sheridan
Peter G. Sheridan, U.S.D.J.

---

performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, *Federal Practice and Procedure* § 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Id.* To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.*

7