UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JAMES A. BOYKINS, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 15-7769 (PGS) (LHG) |
| | : | |
| v. | : | |
| | : | |
| GARY M. LANIGAN, et al., | : | **MEMORANDUM & ORDER** |
| | : | |
| Defendants. | : | |

**PETER G. SHERIDAN, U.S.D.J.**

**I.      INTRODUCTION**

Plaintiff James A. Boykins ("Plaintiff" or "Boykins") is a state prisoner currently incarcerated at the New Jersey State Prison ("NJSP") in Trenton, New Jersey. He is proceeding *pro se* with a fourth amended civil complaint against the following Defendants: (1) Janice Brown; (2) Antonio Campos; (3) Marcus Hicks; (4) Stephen Johnson; (5) G. Kelley; (6) Gary M. Lanigan; (7) C. Lawrence; (8) S. McDonough; (9) K. Mceady; (10) Sergeant Samosuk; (11) D. Smith; (12) Rasoul Suluki; and (13) K. Wickman (hereinafter "Defendants"). Presently pending before this Court is Defendants' motion for summary judgment (ECF 154) as well as Plaintiff's motion for the appointment of counsel. (*See* ECF 163). For the following reasons, Defendants' motion for summary judgment is granted in part on Plaintiff's claims brought under the New Jersey Administrative Code. The remainder of Defendants' motion for summary judgment shall be administratively terminated subject to the ability of Defendants to refile the arguments within their motion not decided in this memorandum and order upon the conclusion of the exhaustion issues as discussed below. Plaintiff's motion for the appointment of counsel is granted for the reasons discussed *infra*.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents ..., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

"If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). The Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

### III.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's claims arise from two separate incidents while he has been incarcerated at the NJSP. Plaintiff is a practicing Muslim. (*See* ECF 139 at 10). In June, 2015, Plaintiff's mother sent him six two-ounce bottles of Muslim prayer oils through the mail. (*See id.* at 9-10). The total cost of these prayer oils was $75.00 (*See id.* at 10). Defendant Kelley, the processing officer of the NJSP mail room, confiscated the prayer oil. (*See id.* at 11; *see also* ECF 154-3 at 11). Defendants do not contest that Defendant Kelley seized the prayer oils. (*See* ECF 154-3 at 11). According to Defendants, NJSP inmates were permitted at the time of the seizure to have prayer oils provided they were brought into NJSP by the chaplain or a volunteer religious group leader. (*See* ECF 153-3 at 10; ECF 154-24 at 2). Plaintiff states he filed an inmate remedy form complaint in July, 2015 about the confiscated prayer oils. (*See* ECF 139 at 12-13). Plaintiff states he never received a response to this inmate remedy form complaint. (*See id.*) Plaintiff filed his original federal complaint with this Court in October, 2015. (*See* ECF 1).

In October, 2016, Plaintiff alleges he was asked to step out of his cell by Defendant Wickham who was accompanied by Defendant Lawrence. (*See* ECF 139 at 14). When Plaintiff asked why he was being asked to step out of his cell, Plaintiff states Wickham told him "we heard you like suing officers." (*See id.*) Ultimately, upon searching Plaintiff's cell, Plaintiff states Wickham took a clear radio, a clear fan, two beard trimmers, two surge protectors and four barber combs. (*See id.*) Plaintiff then states he appeared at "courtline" on October 13, 2016, whereby Defendant Brown told him except for one of the surge protectors and one of the beard trimmers, his property would be returned to him. (*See id.* at 15). Plaintiff alleges his fan and radio were damaged beyond repair.[1] Defendant McCready allegedly told Plaintiff though at one point he could get his property back if he made this lawsuit go away. (*See* ECF 139 at 16).

Defendants counter that Defendant Wickham searched Plaintiff's cell because the power to Plaintiff's cell was off. (*See* ECF 154-3 at 12; ECF 154-11 at 1). The circuit breaker was then reset and Defendant Wickham conducted the cell search to discover what had caused the circuit breaker to pop. (*See* ECF 154-3 at 12; ECF 154-11 at 1). During that search, Wickham discovered a homemade "stinger" - two paper clips wrapped around a bottle cap held together by rubber bands. (*See* ECF 154-3 at 12-13; ECF 154-11 at 1). Wickham seized the items listed by Plaintiff as being unauthorized items. (*See id.*). Plaintiff was ultimately found guilty at a disciplinary hearing of unauthorized possession as Plaintiff should not have been in possession of the radio and fan in the condition they were in along with having more than one surge protector. (*See* ECF 154-12 at 5).

---

[1] The full allegations of this incident are somewhat incomplete as the fourth amended complaint is missing page 15 as filed on the electronic docket.

4

The operative complaint in this action is Plaintiff's fourth amended complaint which was filed on August 8, 2019. (*See* ECF 139). The fourth amended complaint asserts four causes of action:

1. First Amendment – Free Exercise of Religion
2. Violation of N.J. Admin. Code § 10A:17-5.8(a)
3. Violation of N.J. Admin. Code § 10A:17-5.8(b)
4. First Amendment – Retaliation

The Defendants filed a motion for summary judgment which makes several arguments. Most notable for purposes of this memorandum and order, Defendants argue this Court previously dismissed Plaintiff's causes of action under the N.J. Admin. Code in reviewing a prior complaint because the provisions create no private right of action. Additionally, Defendants argue Plaintiff failed to exhaust his administrative remedies with respect to his claims.

Plaintiff opposes Defendants' motion for summary judgment. (*See* ECF 161, 165, 168). Defendants filed a reply in support of their motion. (*See* ECF 162). This Court held oral argument on Defendants' motion for summary judgment on February 11, 2011. (*See* ECF 169).

## IV.     DISCUSSION

A. <u>Causes of Action Under N.J. Admin. Code § 10A:17-5.8(a) & (b)</u>

Plaintiff attempts to bring causes of action under N.J. Admin. Code § 10A:17-5.8(a) & (b). Those regulatory sections state as follows:

> (a) Religious ritualistic elements, including, but not limited to, sacramental wine, fragrance oil in approved containers and matzo, which are necessary as part of the religious service, may be brought into the correctional facility only by the chaplain or a volunteer religious group leader from the community. Such elements must be approved by the correctional facility Administrator or designee and the Director, Office of Community Programs and Outreach Services or designee.

5

> (b) The chaplain(s) shall be responsible for the secure storage, issuance, use, and return of religious ritualistic elements to secure storage in compliance with correctional facility internal management procedures.

N.J. Admin. Code § 10A:17-5.8.

This Court previously dismissed Plaintiff's claims under N.J. Admin. Code § 10A:17-5.8 in analyzing a prior complaint in this case. (*See* ECF 27). Indeed, this Court stated the following:

> Defendants further assert that Plaintiff's state law claims under N.J.A.C. 10A:17- 5.8(a) and (b) must be dismissed, because those regulations do not create private causes of action. As stated above, Plaintiff did not file an opposition refuting this argument. Indeed, while federal rules require Plaintiff to plead the basis of this Court's jurisdiction on every claim, see Fed. R. Civ. P. 8(a)(l), Plaintiff has not done so here with regard to these claims. Instead, Plaintiff simply pleads, "[s]upplemental jurisdiction over plaintiffs state statutory claims can be found at 28 USC § 1367." ECF No. 10 at 1. But, of course, the New Jersey Administrative Code does not contain statutes. As such, the Motion is granted on this ground, and Plaintiff's state law claims under the New Jersey Administrative Code are dismissed without prejudice for failure to plead proper jurisdiction.

(ECF 27 at 2).

Defendants are entitled to summary judgment on Plaintiff's causes of action under the New Jersey Administrative Code because there is no private right of action. As Defendants note, the breach of an administrative regulation does not in and of itself give rise to a private of action. *See Ferraro v. City of Long Branch*, 714 A.2d 945, 955 (N.J. Sup. Ct. App. Div. 1998). The administrative code cited to by Plaintiff does not create one. Indeed, in *Baker v. Camarillo*, No. 17-12095, 2018 WL 1203473, at *5 (D.N.J. Mar. 8, 2018), this Court analyzed a portion (albeit a different regulation within Section 10A) of the New Jersey Administrative Code with respect to the New Jersey Department of Corrections. This Court noted the following in determining whether a statute confers an implied right of action:

6

> When a statute does not expressly provide a private right of action, New Jersey courts "have been reluctant to infer" such a right. *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1142 (N.J. 2001). The factors used by courts to determine whether a statute confers an implied private right of action include whether: "(1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy." *Id.* at 1143. While courts give weight to all three factors, "the primary goal has almost invariably been a search for the underlying legislative intent." *Ibid.* (quoting *Jalowiecki v. Leuc*, 440 A.2d 21, 26 (N.J. Super. Ct. App. Div. 1981)).
>
> As a state prisoner, Plaintiff is member of the class intended to benefit from the Legislature's setting forth the responsibility of the NJDOC, *see, e.g.*, N.J. Stat. Ann. § 30:1B–3(c) ("The incarcerated offender should be protected from victimization within the institution."), but so are members of the general public, *see* N.J. Stat. Ann. § 30:1B–3(a)(1) ("There is a need to: Provide maximum-security confinement of those offenders whose demonstrated propensity to acts of violence requires their separation from the community."). The purpose of these provisions are to provide the statutory authority for the NJDOC's actions and general responsibilities. There is no evidence that the New Jersey Legislature intended to create a private cause of action for damages with these statutes and administrative code provisions.

*Baker*, 2018 WL 1203473, at *5. For similar reasons discussed in *Baker*, Plaintiff's attempt to bring private causes of action under N.J. Admin. Code § 10A:17-5.8 also fails because it does not create a private cause of action to enforce the rights stated therein. Accordingly, Defendants are entitled to summary judgment on these two counts of Plaintiff's fourth amended complaint.

B. <u>Exhaustion</u>

Defendants assert they are entitled to summary judgment on Plaintiff's remaining constitutional claims under the First Amendment (free exercise and retaliation) because Plaintiff did not exhaust his administrative remedies. Under the Prison Litigation Reform Act, ("PLRA"), prisoners must exhaust 'such administrative remedies as are available' before bringing suit to

7

challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)). "[T]hat language is 'mandatory. An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Id.* at 1856 (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2007)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This includes constitutional claims, *Woodford*, 548 U.S. at 91 n.2, and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion must be proper, meaning "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). "A prisoner must exhaust these remedies 'in the literal sense[;]' no further avenues in the prison's grievance process should be available." *Smith v. Lagana*, 574 F. App'x 130, 131 (3d Cir. 2014) (quoting *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004)).

"Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013). As Chief Judge Wolfson has noted though:

> In *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), the Third Circuit held that "some form of notice to the parties and an opportunity to respond are needed before a district court elects to resolve factual disputes regarding exhaustion." *Id.* at 211. It left the specific form of the notice to the discretion of the district courts, however, noting that a court need only, at minimum, "notify the parties that it will consider exhaustion in its role as a fact finder." *Id.* The *Paladino* Court noted that an "opportunity to respond" does not necessarily require full evidentiary hearing, but that

>parties must be permitted to "submit materials relevant to exhaustion that are not already before [the court]." *Id.*

*Nance v. Danley*, No. 17-6409, 2019 WL 2367064, at *5 (D.N.J. June 5, 2019). This memorandum shall serve as notice to the parties this Court intends to resolve factual disputes still outstanding regarding the exhaustion issue in its role as a fact finder. This will include requiring the parties to conduct additional discovery on the issue; submit further documents to the Court in the form of exhibits and briefs, and, if necessary, having this Court conduct an evidentiary hearing.

The NJSP has an inmate remedy system in place. An inmate can submit either an inmate inquiry form or an inmate grievance form. (*See* ECF 154-6 at 4-5). The inmate handbook indicates that inmate inquiry forma are "intended to make routine inquiries and obtain information," whereas the inmate grievance form "is the internal administrative means for the resolution of complaints associated with the conditions of an inmate's confinement." (*See id.* at 2). If an inmate inquiry form is not responded to or returned to an inmate within a fifteen-day response time, an inmate may submit an inmate grievance form. (*See id.* at 5). If an inmate grievance form is not responded to or returned to the inmate within thirty days, the inmate may submit another inmate grievance form noting the date the original form was submitted. (*See id.* at 4).

The NJSP has the following remedy appeal process:

1. Inmates may appeal a staff response using the returned answered yellow copy of the ***Inmate Grievance Form***.
2. After the form has been returned to the inmate, if he/she is dissatisfied with the response, he/she may file an appeal by completing Part 4 on the yellow colored copy within 10 days of receipt of the response.
3. The inmate must re-deposit the originally-answered ***Inmate Grievance Form*** in the box marked "INMATE REMEDY SYSTEM FORMS ONLY".

9

> 4. The Coordinator shall forward the appeal to the Administrator or Administrative designee has 10 working days to answer the appeal, excluding weekends and holidays. Once the appeal is returned to the Coordinator, he/she will make a copy of the form for filing and return the inmate's original yellow colored copy with the appeal response.
> 5. The decision or finding of the Administrator or designee to the Administrative Appeal is the final level of review and decision or finding of the New Jersey Department of Corrections.

(*Id.* at 5).[2]

Defendants moved for summary judgment arguing Plaintiff failed to exhaust his administrative remedies. In support of their argument, they note Plaintiff submitted fifteen appeals to the Administrator. Defendants assert, and this court agrees that none of those fifteen appeals relate to the two incidents giving rise to Plaintiff's free exercise and retaliation First Amendment causes of action. Nevertheless, that point alone does not end this Court's inquiry into the exhaustion issue.

Plaintiff indicates he did try to exhaust his administrative remedies with respect to his free exercise claim. Most notably, he states he initially filed an inmate inquiry form. (*See* ECF 139 at 11). Plaintiff states the matter was referred to the religious issues committee. (*See id.* at 11-12). Thereafter, Plaintiff states he filed an inmate grievance form. (*See id.* at 12). In that grievance form, Plaintiff requested he be permitted to have prayer oil in his cell. (*See* ECF 1-3 at 8). Plaintiff attached an exhibit which indicated this grievance was given tracking number 15-07-0022. (*See* ECF 139 at 12; ECF 1-3 at 12). Plaintiff states he was never provided a response to this grievance though. (*See* ECF 139 at 12).

Defendants argue Plaintiff has not exhausted his administrative remedies with respect to his free exercise claim because he never appealed it to the Administrator as part of NJSP's

---

[2] This grievance process is from the 2015 NJSP inmate handbook. The 2016 handbook has an identical administrative grievance process. (*See* ECF 154-7 at 4).

administrative remedy process. They submitted Plaintiff's grievance appeals. (*See* ECF 154-8). None of them relate to the June, 20215 prayer oil seizure. However, as Defendants admitted during oral argument, if Plaintiff in fact filed a grievance that was never responded to, Plaintiff has an argument that administrative remedies were thereby made "unavailable" to Plaintiff. (*See* Tr. 2/11/21 at 29). Indeed, as explained by Chief Judge Wolfson in a different case arising out of the purported failure to respond to an inmate's grievance form at NJSP:

> if [plaintiff] in fact filed the Remedy Forms he claims to have and received no response, the putative remedy of administrative appeal was not available for the purposes of the PLRA. As it does not appear that there was any way for [plaintiff] to file an administrative appeal of a non-response, a failure by the prison to process or respond to Remedy Forms would render the potential administrative appeal a dead end or would indicate that prison staff were thwarting such avenues for relief. *See Ross*, 136 S. Ct. at 1859–60.
>
> This finding is consistent with the analysis of the Court of Appeals for the Third Circuit in *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013). There, as in this case, the inmate plaintiff contended that he had filed grievances, but had not received any response or decision regarding those grievances, and thus had filed no administrative appeal. *Id.* at 273. The administrative-remedy system considered in *Small* is not meaningfully distinguishable from the one that was effective in NJSP in 2012 and 2013. *See id.* at 274–75. The district court in *Small* had found that some of Small's claims were unexhausted because he had not filed any administrative appeal following grievances that produced no response. *See id.* at 273. The Third Circuit reversed, finding, because the procedures "discuss[ed] only the appeal of a *decision* with which the inmate is not satisfied," that the district court's analysis "erroneously read an additional requirement into [the] grievance procedures." *Id.* That court further explained, "Because [the grievance] procedures did not contemplate an appeal from a non-decision, when Small failed to receive even a response to the grievances ... , much less a decision as to those grievances, the appeals process was unavailable to him." *Id.* The Third Circuit reconfirmed this principle three years later, in *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148 (3d Cir. 2016), holding that a prison had "rendered its administrative remedies unavailable to [the plaintiff] when it failed to timely (by its own

11

> procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." *Id.* at 154; *see also Jackson v. Gandy*, Civ. No. 09-1141 (AMD), 2017 WL 3293482, at *4, *7 (D.N.J. Aug. 1, 2017) (finding administrative appeal unavailable in circumstances virtually identical to those herein). These precedents confirm this Court's holding in its prior opinion, that "if this Court were to find that Plaintiff in fact filed the five grievances concerning Defendant's conduct, and that Plaintiff did not receive responses to those complaints, the Court could find that the IRF grievance process was not legally 'available' to Plaintiff, excusing his failure to exhaust administrative remedies." (ECF No. 67 at 17.)

*Romero v. Ahsan*, No. 13-7695, 2018 WL 6696782, at *12 (D.N.J. Dec. 20, 2018), *aff'd in part, vacated in part on other grounds, remanded*, 827 F. App'x 222 (3d Cir. 2020). Given the uncertainty of whether Plaintiff's purported lack of exhaustion should be excused, further discovery (and perhaps an evidentiary hearing depending on what is produced during discovery) on the exhaustion of Plaintiff's free exercise claim is necessary.

This Court finds further discovery is also warranted to determine whether Plaintiff has exhausted his retaliation claim and/or whether any lack of exhaustion on this claim should be excused. Plaintiff stated during oral argument he "grieved" this issue. (Tr. 2/11/21 at 27). Defendants counter Plaintiff's statement by stating during oral argument Plaintiff submitted "inquiry" forms but did not submit a formal grievance form. (*See id.* at 28). This Court agrees with Defendants that submitting an "inquiry" form would not exhaust Plaintiff's administrative remedies under the NJSP's system. However, this Court finds the most prudent course is to permit additional discovery (and perhaps an evidentiary hearing should witness credibility need to be weighed) on whether Plaintiff exhausted his retaliation claim (and/or whether any

12

purported lack of exhaustion should be excused) as well prior to this Court arriving at a conclusion on the exhaustion issue on Plaintiff's retaliation claim.[3]

C. Motion to Appoint Counsel

Also pending before this Court is Plaintiff's motion for the appointment of counsel. (*See* ECF 163). This Court previously granted Plaintiff's request to proceed *in forma pauperis*. (*See* ECF 6). Furthermore, having considered the factors listed in *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993); and in the interests of justice, this Court finds that appointing an attorney to represent Plaintiff is warranted at this time for the limited purpose of conducting discovery on Plaintiff's behalf on the exhaustion issue and representing Plaintiff at an evidentiary hearing should one be necessary.

Accordingly, IT IS this 31ST day of March, 2021,

ORDERED Defendants' motion for summary judgment (ECF 154) is granted in part; judgment is granted in favor of Defendants on Plaintiff's claims relying on N.J. Admin. Code § 10A:17-5.8(a) & (b); the remaining portions of Defendants' motion for summary judgment is administratively terminated; the remaining portions of Defendants' motion for summary judgment not addressed in this memorandum and order may be reinstated upon the conclusion of this Court's decision on whether Plaintiff exhausted his administrative remedies on his constitutional claims (and/or whether any purported lack of exhaustion should be excused); and it is further

---

[3] This Court declines to rule on the other arguments within Defendants' motion for summary judgment at this time. The remaining portion of Defendants' motion will be administratively terminated. Defendants will be permitted to reinstate the remaining portions of their summary judgment motion not discussed in this memorandum and order should this Court ultimately reject their exhaustion arguments.

ORDERED that Plaintiff's motion for the appointment of counsel (ECF 163) is granted; Plaintiff shall be appointed an attorney to represent him pursuant to 28 U.S.C. § 1915(e)(1) for the limited purpose of conducting further discovery, submitting briefs and documents to this Court and potentially representing Plaintiff at an evidentiary hearing on the exhaustion issue; this appointment shall cease once this Court decides the exhaustion issue; and it is further

ORDERED that within fourteen (14) days of accepting the limited appointment; the selected attorney shall enter an appearance; and it is further

ORDERED the parties shall conduct discovery and may submit further briefs on the exhaustion issue on a schedule to be determined by the Magistrate Judge; and it is further

ORDERED that this Court may schedule an evidentiary hearing on the exhaustion issue (should one be necessary) once discovery on the exhaustion issue is complete before the Magistrate Judge and any other further briefs/exhibits are submitted to the Court; and it is further

ORDERED the Clerk shall serve this memorandum and order on Plaintiff by regular U.S. mail.

s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.