UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

JAMES A. BOYKINS,

    Plaintiff,

v.

GARY M. LANIGAN, et al.,

    Defendants.
_____

Civ. No. 15-7769 (PGS)(RLS)

**OPINION**

**PETER G. SHERIDAN, U.S.D.J.**

**I.**     **INTRODUCTION**

    Plaintiff, James A. Boykins ("Plaintiff"), is a state prisoner currently incarcerated at the New Jersey State Prison ("NJSP") in Trenton, New Jersey. He is proceeding *pro se* with a fourth amended civil rights complaint against the following Defendants: (1) Janice Brown; (2) Antonio Campos; (3) Marcus Hicks; (4) Stephen Johnson; (5) G. Kelley; (6) Gary M. Lanigan; (7) C. Lawrence; (8) S. McDonough; (9) K. Mceady; (10) Sergeant Samosuk; (11) D. Smith; (12) Rasoul Suluki; and (13) K. Wickman (hereinafter "Defendants"). (ECF No. 139.) Presently pending before this Court is Defendants' motion for summary judgment (ECF No. 196) and Plaintiff's response (ECF No. 206). Plaintiff has also filed a motion for appointment of counsel. (ECF No. 203.) For the following reasons, the motion for summary judgment is granted and Plaintiff's motion for appointment of counsel is denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The Court previously summarized the factual background of this case as follows:

> Plaintiff's claims arise from two separate incidents while he has been incarcerated at the NJSP. Plaintiff is a practicing Muslim. (*See* ECF 139 at 10.) In June, 2015, Plaintiff's mother sent him six two-ounce bottles of Muslim prayer oils through the mail. (*See id.* at 9-10.) The total cost of these prayer oils was $75.00 (*See id.* at 10.) Defendant Kelley, the processing officer of the NJSP mail room, confiscated the prayer oil. (*See id.* at 11; *see also* ECF No. [196-3, Def. Stat. of Mat. Facts ("DSOMF"), ¶ 47].) Defendants do not contest that Defendant Kelley seized the prayer oils. (*See* [DSOMF, ¶ 47].) According to Defendants, NJSP inmates were permitted at the time of the seizure to have prayer oils provided they were brought into NJSP by the chaplain or a volunteer religious group leader.[1] (*See* [DSOMF, ¶ 38]; ECF No. 154-24 at 2.) Plaintiff states he filed an inmate remedy form complaint in July, 2015 about the confiscated prayer oils. (*See* ECF No. 139 at 12-13.) Plaintiff states he never received a response to this inmate remedy form complaint. (*See id.*) Plaintiff filed his original federal complaint with this Court in October, 2015. (*See* ECF No. 1.)
>
> In October, 2016, Plaintiff alleges he was asked to step out of his cell by Defendant Wickham who was accompanied by Defendant Lawrence. (*See* ECF No. 139 at 14.) When Plaintiff asked why he was

---

[1] Defendants submit that around 2005, NJSP permitted inmates to access religious elements such as musk oils by having a chaplain or volunteer religious group leader bring those elements into NJSP. (DSOMF, ¶ 38.) Defendants submit that a policy was put into place for the safety and security of NJSP inmates. (*Id.*, ¶ 40.) Following the filing of Plaintiff's complaint in this matter, policies in NJSP were changed to permit inmates, including but not limited to Plaintiff, to purchase and retain prayer oil form the inmate commissary. (*Id.*, ¶ 43.)

2

> being asked to step out of his cell, Plaintiff states Wickham told him "we heard you like suing officers." (*See id.*) Ultimately, upon searching Plaintiff's cell, Plaintiff states Wickham took a clear radio, a clear fan, two beard trimmers, two surge protectors and four barber combs. (*See id.*) Plaintiff then states he appeared at "courtline" on October 13, 2016, whereby Defendant Brown told him except for one of the surge protectors and one of the beard trimmers, his property would be returned to him. (*See id.* at 15). Plaintiff alleges his fan and radio were damaged beyond repair. Defendant McCready allegedly told Plaintiff though at one point he could get his property back if he made this lawsuit go away. (*See id.* at 16).
>
> Defendants counter that Defendant Wickham searched Plaintiff's cell because the power to Plaintiff's cell was off. (*See* [DSOMF, ¶¶ 50-54]; ECF No. [197-8 at 6].) The circuit breaker was then reset and Defendant Wickham conducted the cell search to discover what had caused the circuit breaker to pop. (*See* [DSOMF, ¶¶ 50-54]; ECF No. [197-8 at 6].) During that search, Wickham discovered a homemade "stinger" - two paper clips wrapped around a bottle cap held together by rubber bands. (*See* [DSOMF, ¶ 55]; ECF No. [197-8 at 6].) Wickham seized the items listed by Plaintiff as being unauthorized items. (*See id.*). Plaintiff was ultimately found guilty at a disciplinary hearing of unauthorized possession as Plaintiff should not have been in possession of the radio and fan in the condition they were in along with having more than one surge protector. (*See* ECF No. [197-8 at 5].)

(ECF No. 170 at 3-4.)

3

The operative complaint in this action is Plaintiff's fourth amended complaint ("Amended Complaint") which was filed on August 8, 2019. (ECF No. 139.) The Amended Complaint asserted four causes of action:

1. First Amendment- Free Exercise of Religion.

2. Violation of N.J. Admin Code § 10A:17-5.8(a).

3. Violation of N.J. Admin. Code § 10A:17-5.8(b).

4. First Amendment- Retaliation.

(*Id.*) On July 10, 2020, Defendants filed their first motion for summary judgment seeking to dismiss all claims in the Amended Complaint. (ECF No. 154.) On March 31, 2021, the Court filed a Memorandum & Order: (1) granting Defendants summary judgment as to Plaintiff's claims for violation of the New Jersey Administrative Code, (2) administratively terminating the remainder of Defendants' motion for summary judgment "subject to the ability of Defendants to refile the arguments within their motion not decided in this memorandum and order upon conclusion of the exhaustion issues . . .," and (3) granting Plaintiff's motion for appointment of counsel as exclusively to the issue of whether Plaintiff properly exhausted his administrative remedies before filing his initial complaint. (*See* ECF No. 170.)

Following the parties exchange of supplemental discovery and a conference with the Court, on January 7, 2022, Plaintiff's appointed counsel submitted a joint status letter indicating that the parties stipulated that:

4

> (1) Plaintiff did not exhaust his remedies as to his retaliation claim, so that claim should be dismissed;
>
> (2) Defendants withdraw their argument that Plaintiff did not exhaust administrative remedies as to his free exercise claim; and
>
> (3) Defendants seeks thirty days to file a summary judgment motion addressing the remaining free exercise claim.

(ECF No. 191.) Defendants filed the instant motion for summary judgment arguing for dismissal of Plaintiff's First Amendment Free Exercise of Religion claim. (ECF No. 196.) Plaintiff opposes Defendants' motion for summary judgment. (ECF No. 206.)

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue

5

of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents . . ., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be

drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). The Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

Defendants argue Plaintiff's remaining First Amendment Free Exercise of Religion claim should be dismissed.[2]

The law applicable to prisoners' Free Exercise claims is well-settled. Although prisoners "clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion," *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted), at the same time, "the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates." *DeHart v. Horn*, 227 F.3d 47, 50-51 (3d Cir. 2000) (citing *Fell v. Procunier*, 417 U.S. 817, 822-23 (1974)). Thus, a prison

---

[2] As noted above, on January 7, 2022 Plaintiff's appointed counsel submitted a joint status letter indicating that the parties stipulated that Plaintiff did not exhaust his remedies as to his retaliation claim and the claim should be dismissed for failure to exhaust administrative remedies. (ECF No. 191.) Based on that joint stipulation, Plaintiff's First Amendment retaliation claim is dismissed without prejudice.

inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *See Fell*, 417 U.S. at 822.

Two threshold requirements must be met before particular beliefs, alleged to be religious in nature, are accorded First Amendment protection. *Africa v. Pennsylvania*, 662 F.2d 1025, 1029-30 (3d Cir. 1981). The beliefs avowed must be (1) sincerely held, and (2) religious in nature. *Id.* If both of these requirements are met, the Court must then apply the four factors set out by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987), for assessing prison regulations that restrict inmates' constitutional rights. *Fraise v. Terhune*, 283 F.3d 506, 513 (3d Cir. 2002). These factors require courts to consider: (1) whether the regulation bears a 'valid, rational connection' to a legitimate and neutral government objective; (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) "the absence of ready alternatives." *Turner,* 482 U.S. at 89–90.

As the Third Circuit has observed, *Turner* did not expressly state which party bears the burden of proving each of these four factors. *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012). Thus, the Third Circuit has developed a two-step, burden-shifting analysis under *Turner*:

> First, the prison has the burden of demonstrating the First *Turner* Factor. This burden is slight, and in certain instances, the connection may be a matter of common sense. Second, if the prison meets its burden under the First *Turner* Factor, then we consider the [Second, Third, and Fourth] *Turner* Factors.

*Sharp*, 669 F.3d at 156.

Defendants initially argue that Plaintiff has failed to show that the NJSP's 2015 restrictions on prayer oil infringed on Plaintiff's religious beliefs. (ECF No. 192-2 at 24-25.) While Defendants do not dispute the sincerity of Plaintiff's sincerely held religious belief that he needs prayer oil, they argue Plaintiff does not allege the oils were "unavailable through the prison chaplaincy, but rather that he could not receive prayer oil shipped to him by his mother." (*Id.*) Therefore, Defendants argue Plaintiff has failed to show the NJSP restrictions on prayer oil infringed his religious belief that he must use prayer oil. (*Id.*) Defendants fail to address the portion of Plaintiff's Amended Complaint where Plaintiff submits that "Plaintiff has no other way of obtaining prayer oil for his daily prayers as the chaplain department does not have a system set up that would allow Muslim prisoners to get oil each time of the day they are required to pray" and that the religious volunteer group leader "was prohibited from bringing in the prayer oil." (ECF No. 139 at 10, 12.) The Amended Complaint alleges a restriction on Plaintiff's sincerely held religious belief that he must use prayer oil every time he prays.

9

Thus, under *Turner*, we must determine whether there is a rational connection between the prison's refusal to allow Plaintiff to receive prayer oil from his mother and a legitimate penological interest. Defendants argue the regulation requiring prayer oil to come from the chaplain or volunteer religious group leader served a legitimate penological interest. (ECF No. 196-2 at 25-26.) Defendants argue the policy was put into place for the safety and security of the NJSP inmates. (DSOMF, ¶ 40.) Defendants acknowledge that there is a lack of solid evidence regarding the safety and security reasons behind the policy. However, Defendants support their argument that NJSP has a legitimate penological interest in restricting prayer oils by citing to other cases. Defendants note that in *Hammons v. Saffle*, the Tenth Circuit Court of Appeals upheld a policy banning the purchase of and in cell possession of prayer oil, finding the correctional facility had a legitimate penological interest in restricting the oil for several reasons, including that prayer oil could be used to mask the scent of drugs, or could be used to slip out of handcuffs. 348, F3d 1250 (10th Cir. 2003.) Defendants also note that the Third Circuit Court of Appeals noted in *Abdul-Aziz v. Ricci* that NJSP's policy forbidding the possession of oils in cells was for security reasons. *See* 569 F. App'x 62, 67 (3d Cir. 2014), cert. granted, vacated on other grounds, 576 U.S. 1002 (2015). Plaintiff does not respond to Defendants' argument that NJSP had a legitimate penological interest in restricting from where inmates could obtain prayer oil. We must accord great deference to the judgment of

prison officials, particularly with respect to decisions that implicate institutional security. *Turner*, 482 U.S. at 84–85. As such, NJSP's policy was rationally connected to the penological interest in maintaining security.

Turning to the second *Turner* factor, Defendants' have met their burden of showing there were alternate means for Plaintiff to exercise his religious beliefs. (ECF No. 196-2 at 27-28.) With respect to the second factor, "[w]hen other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation." *Turner*, 482 U.S. at 90. Defendants note that other avenues remain available for Plaintiff to exercise his religious beliefs, Plaintiff was able to: (1) purchase kosher and halal foods through the prison commissary; (2) observe Muslim holidays; (3) have work-free days on Muslim holidays; (4) purchase and retain copies of religious texts, the Quran; (5) purchase and retain Hadiths; (6) engage in congregational gatherings and prayers; (7) attend religious services; (8) to make Du-A, a special prayer to God to help himself and others; (9) to do Sunna prayers; (10) wear religious clothing; (11) purchase and retain religious items such as a prayer rug and kufi; and (12) obtain religious prayer oil through alternate means. (*Id.*, citing DSOMF, ¶¶ 24-32, 34-36, 38-39.) Although Plaintiff contends he holds a sincere religious belief that he must use prayer oil prior to praying, he does not allege, or set forth any evidence to establish, that alternative means of exercising his

11

religious rights were not available to him. The second *Turner* factor weighs in favor of Defendants.

The third factor in *Turner* requires the Court to determine the impact that an accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally. Defendants argue that further accommodating Plaintiff's rights by changing the regulation to require the prison chaplain to be available five times a day for prayer oil would negatively impact inmates from other religious organizations. Plaintiff does not dispute this argument.

The fourth *Turner* factor requires the court to consider whether there are alternatives to the prison regulation that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. Here, the record shows that after Plaintiff filed this lawsuit, NJSP modified its policies to permit inmates to purchase prayer oil from the prison commissary. (DSOMF, ¶ 43.) This alternative would appear to accommodate Plaintiff's rights at *de minimis* cost to valid penological interests. However, Defendants submit that Plaintiff argues that the alternative of purchasing the prayer oil now available in commissary is not adequate because he is required to choose between purchasing prayer oil and hygiene products in the commissary. (*Id.*, ¶ 44.) Defendants argue that Plaintiff's alternative option is that family members be allowed to purchase oil from source-of-sale vendors. (*Id.*, ¶ 45.)

Defendants claim because family members are permitted to deposit money into Plaintiff's commissary to purchase items, including toiletries and prayer oil, the alternative of allowing family members to purchase the oil has essentially already been put into place. Although the Court agrees with Defendants that the new NJSP policy would enable a family member to pay for the oil by placing money in the commissary, Defendants do not address Plaintiff's testimony that the prayer oil in the commissary is watered down and not pure. (*See* ECF No. 197-6 at 11, Pl. Depo. May 10, 2018, at 86:7-19.) Defendants do not address the costs of Plaintiff's suggested alternative that family be permitted to send prayer oil from a source of sale vendor. Therefore, a material issue of fact remains regarding the fourth *Turner* factor.

Considering the balancing test in *Turner*, the first three factors weigh in favor of Defendants. Thus, Defendants are entitled to summary judgment on Plaintiff's remaining First Amendment Free Exercise of Religion claim.[3]

## V. CONCLUSION

For the reasons expressed above, the Court will grant Defendants' motion for summary judgment. (ECF No. 196.) Accordingly, Plaintiff's Amended Complaint

---

[3] Based on the Court's finding that Defendants are entitled to summary judgment on this issue, the Court will not address Defendants' remaining arguments.

(ECF No. 139) is dismissed. Plaintiff's motion for appointment of counsel (ECF No. 203) is dismissed as moot. An appropriate order follows.

DATED: February 24, 2023

s/Peter G. Sheridan
PETER G. SHERIDAN, U.S.D.J.
